IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | )<br>)<br>) |
| Plaintiff, | ) CASE NO:<br>)<br>) |
| v. | ) COMPLAINT FOR INJUNCTIVE<br>) AND OTHER EQUITABLE |
| TRADEWALE LLC, TRADEWALE MANAGED FUND, and VALDAS DAPKUS, | ) RELIEF AND FOR CIVIL<br>) MONETARY PENALTIES UNDER<br>) THE COMMODITY EXCHANGE<br>) ACT AND COMMISSION |
| Defendants. | ) REGULATIONS<br>)<br>) **JURY TRIAL DEMANDED** |

Plaintiff Commodity Futures Trading Commission ("CFTC" or "Commission"), by and through its attorneys, alleges as follows:

## I. SUMMARY

1. From at least 2017 to in or about April, 2020 (the "Relevant Period"), Tradewale LLC a/k/a TW Group and a/k/a Tradewale Texas aka Tradewhale, and Tradewale Managed Fund (collectively "Tradewale"), acting through and by its officers, agents and employees, including Defendant Dapkus, fraudulently solicited members of the public for the purported purpose of trading off-exchange, retail foreign currency on a leveraged or margined basis ("forex") in accounts to be managed by Tradewale, and misappropriated customers' funds, in violation of the Commodity Exchange Act, 7 U.S.C. §§ 1 *et seq.* (2018) (the "CEA" or the "Act").

2. Using its website tradewale.com, as well as various social media platforms, Tradewale fraudulently solicited members of the public to deposit funds into accounts managed

by Tradewale, for the purported purpose of buying and selling investment products, including forex. Through such solicitations, Tradewale persuaded at least 15 individuals to transfer at least $ 700,000 to Tradewale.

3. In soliciting members of the public to trade, Tradewale made various material misrepresentations and omissions, including that it had a "unique trading system" using "artificial intelligence" to trade forex, and that it generated average monthly returns of 4% - 11% and average yearly returns of over 55% with "minimal risk." Although Tradewale's solicitation materials claimed that accounts could be "easily accessed," most, if not all, U.S. customers of Tradewale were never able to withdraw funds from their accounts. By the end of the Relevant Period, the Tradewale website went down and customers could no longer contact Tradewale. Tradewale also failed to inform prospective customers that it had no U.S.-based forex trading accounts.

4. As part of its scheme, Tradewale sought to advise and manage the trading of forex for customers for compensation and profit, thereby acting as a Commodity Trading Advisor ("CTA") without being registered or exempt from registration with the Commission as a CTA, as required by the Act and CFTC Regulations ("Regulations").

5. By this conduct, and the conduct further described herein, Tradewale has engaged, is engaging and/or is about to engage in acts and practices in violation of Sections 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C) (2018) and Commission Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2020), by committing fraud in connection with forex transactions.

6. Tradewale's failure to register as a CTA violated Section 4m(1) of the Act, 7 U.S.C § 6m(1) (2018).

7.      By engaging in fraudulent conduct by use of the mails or any means of interstate commerce while acting as a CTA or associated person of a CTA, Tradewale also violated Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2018).

8.      During the Relevant Period, Defendant Valdas Dapkus ("Dapkus") committed the acts, omissions, and/or failures alleged herein within the scope of his employment, agency, or office with Tradewale.  Therefore, Tradewale is liable for Dapkus's acts, omissions, and/or failures undertaken in that capacity, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2020).

9.      Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), the Commission brings this action to enjoin Defendants' unlawful acts and practices and to compel their compliance with the Act and Commission Regulations, and further to enjoin Defendants from engaging in any commodity-related activity.

10.     In addition, the Commission seeks civil monetary penalties and remedial ancillary relief including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, post-judgment interest and such other relief as the Court deems necessary and appropriate.

11.     Unless restrained and enjoined by this Court, there is a reasonable likelihood that Defendants will continue to engage in the acts and practices alleged in this Complaint, as more fully described below.

## II.     JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 (2012) (codifying federal question jurisdiction) and 28 U.S.C. §1345 (2012) (providing that U.S. district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  In addition, Section 6c of the Act,

7 U.S.C. § 13a-1 (2018), provides that the U.S. district courts have jurisdiction to hear actions brought by the Commission for injunctive relief or to enforce compliance with the Act whenever it shall appear to the Commission that a person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act, or any rule, regulation, or order thereunder.

13. The Commission possesses jurisdiction over the forex solicitations and transactions at issue in this case pursuant to 7 U.S.C. § 13a-1 (2018), and Section 2(c)(2)(C) of the Act, 7 U.S.C. § 2(c)(2)(C) (2018).

14. Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e), because Defendants transact or transacted business in this District, and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred, are occurring, or are about to occur in this District. Specifically, during the Relevant Period at least one customer who invested funds with Tradewale resided in this District, in Flemington, NJ.

### III.   THE PARTIES

15. Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with the responsibility for administering and enforcing the provisions of the CEA and CFTC Regulations.

16. Defendant Tradewale LLC, a/k/a TW Group and a/k/a Tradewale Texas aka Tradewhale, is a limited liability company organized in Illinois on or about January 2, 2019, and dissolved in or about September, 2020. During the Relevant Period, Tradewale LLC maintained business addresses in Downers Grove, Illinois and in Houston, Texas, to which members of the public whom both Tradewale LLC and Tradewale Managed Fund solicited were directed to send funds. Tradewale LLC has never been registered in any capacity with the Commission.

17. Defendant Tradewale Managed Fund is an entity purportedly located in London, United Kingdom offering forex investments to the public. Tradewale Managed Fund has never been registered in any capacity with the Commission. Defendants Tradewale LLC and Tradewale Managed Fund are collectively referred to herein as "Tradewale."

18. Defendant Valdas Dapkus is an individual whose last known address is in Lombard, IL. Dapkus held himself out as being the Manager of Tradewale LLC, and he submitted incorporation papers and tax documents on behalf of Tradewale LLC. Dapkus also is the sole authorized signatory for Tradewale LLC's U.S. bank accounts. Dapkus has never been registered with the Commission in any capacity.

## IV. FACTS

**Defendants' Fraudulent Conduct**

19. During the Relevant Period, Tradewale used the mails and other means or instrumentalities of interstate commerce to engage in a business that was of the nature of a commodity trading advisor.

20. Specifically, during the Relevant Period, Tradewale, acting through and by its officers, employees, and agents, including Dapkus, solicited the retail public using its website, tradewale.com, Facebook, Linkedin, posts on Medium.com and other social media, as well as through marketing materials distributed to customers and prospective customers. Tradewale solicited customers to deposit funds with it in order to achieve specific purported returns based on trading, including by trading forex.

21. For example, Tradewale's Facebook page falsely claimed its customers received "over 55% APY returns" based on Tradewale's supposed "unique trading system." It also stated that customers could "trade on the market with minimal risk and investment."

22. Tradewale's Linkedin page stated that it was a London-based financial services company with "four separate trading systems that have been tested in all market conditions." Also during the Relevant Period, a post entitled "Tradewale – Forex Trading Made Easy" was published on Medium.com purportedly authored by a "senior trader" at Tradewale. The Medium.com post falsely claimed that Tradewale used artificial intelligence to trade forex, and that Tradewale was good for "newbie investors" because "once an investor buys a package . . . [i]nput and research from the investor are not even required." Similarly, the Medium.com post stated that Tradewale "allows anyone to tackle forex trading" and "[is] an ideal solution for traders of all levels."

23. The Medium.com post further stated that the "Tradewale team has mastered the best AI techniques and teamed them with savvy human investment managers" and "promise[d] an average 4.95% monthly return" on forex. The Medium.com post touted Tradewale's "simple fee structure," stating that accounts under $25,000 pay Tradewale "20 percent of returns, i.e. profits" and that accounts with higher capital investments pay "a progressively lower fee."

24. Tradewale also distributed a summary prospectus to prospective customers entitled "Tradewale Managed Fund" dated February 28, 2019. The prospectus advertised that "our award winning research and risk management strategies have delivered positive returns for over a decade." The prospectus stated that 20% of funds held by Tradewale were invested in forex in January 2018, and 24% of funds were invested in forex in January 2019. With regard to these purported investments, the Tradewale prospectus falsely claimed to have achieved average monthly rates of return of 4% -11% and stated "over the past five years, we have provided average annual returns of over 55%."

25. The prospectus also included a Q and A section that asked "[w]hy invest with us?" and falsely provided as the answer "[b]ecause we provide consistently positive returns. This results in monthly deposits into an account that is easily accessed."

26. Customers who wanted to set up accounts with Tradewale as a result of these solicitations were told to either wire funds to Tradewale's U.S. bank accounts, which were controlled by Dapkus, or to send checks to one of two business addresses that Tradewale maintained in the U.S.: a UPS box located in Downers Grove, Illinois, or a mailbox number in Houston, Texas.

27. The UPS box in Downers Grove, Illinois, was rented beginning in or about March 2018.

28. At least 15 customers deposited a total of at least $700,000 into Tradewale's U.S. bank accounts.

29. Customers who invested funds with Tradewale received an online confirmation of their investment, and were initially able to track purported profits online and contact Tradewale customer support via email or a chat application.

30. By in or around mid-2019 however, customers were unable to withdraw funds from their Tradewale accounts, and were also unable to access the Tradewale website or to successfully contact Tradewale customer support. Most, if not all, U.S. customers of Tradewale were unable to withdraw the funds they invested with Tradewale or any purported profits in their accounts.

31. Upon information and belief, Tradewale did not trade forex for customers' accounts as it represented it would do, as Tradewale does not have any trading accounts with futures commission merchants ("FCMs") or retail foreign exchange dealers ("RFEDs")

registered with the CFTC. Account statements for Tradewale's business bank accounts –into which customers' funds were deposited – indicate that rather than using customers' funds for trading forex, Tradewale used customers' funds for restaurants, drug stores, supermarkets, department stores, lodging, and cash withdrawals at ATMs.

32. Statements made by Tradewale in soliciting customers to trade forex, including the statements in paragraphs 21 through 26 above, were materially false and/or materially misleading because, among other things, upon information and belief, Tradewale misrepresented and falsified its past profits and could not guarantee specified profits  Tradewale also omitted material facts necessary to make the statements in paragraphs 21-26 not materially false and/or materially misleading, including, among other things, the inherent risks involved in trading forex on a leveraged or margined basis, and that Tradewale did not have any U.S. forex trading accounts.

33. Funds received by Tradewale for the purpose of trading forex were contributed by persons who were not eligible contract participants ("ECPs"), as defined in Section 1a(18)(A)(xi) of the Act, 7 U.S.C. § 1a(18)(A)(xi) (2012). At no point did Tradewale limit its solicitations to ECPs.

### V. VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND CFTC REGULATIONS

#### COUNT I

**Violations of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) (2018)**
**(Futures Fraud)**

34. The allegations set forth in paragraphs 1 through 33 are re-alleged and incorporated herein by reference.

35. 7 U.S.C. § 6b(a)(2)(A)-(C) (2018), makes it unlawful:

for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, or swap, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market – (A) to cheat or defraud or attempt to cheat or defraud the other person; (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; or (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for the other person.

36. Pursuant to Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(iv) (2018), 7 U.S.C. § 6b(a)(2), applies to Tradewale's foreign currency transactions "as if" they were a contract of sale of a commodity for future delivery.

37. Pursuant to Section 2(c)(2)(C)(ii) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(ii) (2018), Tradewale's foreign currency transactions are "subject to" 7 U.S.C. § 6b(a)(2).

38. By the conduct alleged herein, Defendants cheated or defrauded or attempted to cheat or defraud other persons and willfully deceived or attempted to deceive customers by, among other things, providing false and/or misleading information in order to fraudulently solicit customers to have Tradewale trade their forex accounts in violation of 7 U.S.C. § 6b(a)(2)(A)-(C). Defendants violated this Section by, among other things:

> a. Tradewale's false claim that it intended to trade customers' funds.
>
> b. Tradewale's misappropriation of customer funds for unauthorized purposes and for the benefit of itself or its agents without customers' permission, including misappropriation of funds in bank accounts established by Defendant Dapkus and for which Dapkus was the sole signatory.

    c. Tradewale's misrepresentation that it had generated average monthly returns of 4%-11%.

    d. Tradewale's misrepresentation that it averaged yearly returns of over 55%.

    e. Tradewale's false promise that it would deliver 4.95% monthly returns on trading forex.

    f. Tradewale's misrepresentation that it had delivered positive returns for over a decade and consistently positive returns.

    g. Tradewale's false claim that its customer accounts were easily accessed.

39. Defendants directly engaged in the acts and practices described above willfully, knowingly or with reckless disregard for the truth of their representations or omissions.

40. Defendant Dapkus committed the acts, omissions, and/or failures alleged herein within the scope of his employment, agency, or office with Tradewale LLC.  Therefore, Tradewale LLC is liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Regulation 1.2, 17 C.F.R. § 1.2 (2020), as principal for its agent's acts, omissions, or failures in violation of 7 U.S.C. § 6b(a)(2)(A)-(C).

41. Each misrepresentation or omission of material fact and each act of misappropriation, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C).

## COUNT II

### Violations of CFTC Regulation 5.2(b), 17 C.F.R. § 5.2(b) (2020)
### (Forex Fraud)

42. The allegations set forth in paragraphs 1 through 41 are re-alleged and incorporated herein by reference.

43. 17 C.F.R. § 5.2(b) (2020) provides that it shall be unlawful for any person, by use of the mails or by any means or instrumentality of interstate commerce, directly or indirectly, or in connection with any retail forex transaction: (1) to cheat or defraud or attempt to cheat or defraud any person; (2) willfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or (3) willfully to deceive or attempt to deceive any person by any means whatsoever.

44. By the conduct alleged herein, Defendants cheated or defrauded or attempted to cheat or defraud other persons and willfully deceived or attempted to deceive customers by, among other things, providing false and/or misleading information in order to fraudulently solicit customers to have Tradewale trade their forex accounts in violation of 17 C.F.R. § 5.2(b). Defendants violated this Regulation by, among other things, each of the false claims and/or actions listed in paragraph 37a-g.

45. Defendants engaged in the acts and practices described above willfully, knowingly or with reckless disregard for the truth of their representations or omissions.

46. Defendant Dapkus, who was an official or agent or other person acting for Tradewale LLC, committed the acts, omissions, and/or failures alleged herein within the scope of his employment, agency, or office with Tradewale LLC.  Therefore, Tradewale LLC is liable under Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2018), and Regulation 1.2, 17 C.F.R.

§ 1.2 (2020), as principal for its agent's acts, omissions, or failures in violation of the Act and Commission Regulations.

47. Each misrepresentation or omission of material fact and each act of misappropriation, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of 17 C.F.R. § 5.2(b).

## COUNT III

**Violations of Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2018)**
**(Fraud by a Commodity Trading Advisor)**

48. The allegations set forth in paragraphs 1 through 47 are re-alleged and incorporated herein by reference.

49. 7 U.S.C. § 6*o*(1) (2018), in relevant part, makes it unlawful for a commodity trading advisor, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly  -- to employ any device, scheme or artifice to defraud any client or participant or prospective client or participant; or to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

50. Pursuant to Section 2(c)(2)(C)(ii) of the Act, 7 U.S.C. §§ 2(c)(2)(C)(ii) (2018), Tradewale's foreign currency transactions are "subject to" 7 U.S.C. § 6*o*(1).

51. Defendants violated 7 U.S.C. § 6*o*(1) in that, while acting as a CTA and/or acting as an Associated Person of a CTA, by use of the mails or any means or instrumentality of interstate commerce, they directly or indirectly employed a device, scheme, or artifice to defraud customers or engaged in transactions, practices, or a course of business which operated as a fraud or deceit upon customers by, among other things, providing false and/or misleading information in order to fraudulently solicit customers to have Defendants trade their forex accounts, and

misappropriating customer funds.  Defendants violated this Section by, among other things, each of false claims and/or actions in paragraph 37a-g.

52. Each act of fraudulent solicitation and misappropriation, including but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation by Defendants of 7 U.S.C. § 6*o*(1).

## COUNT IV

### Violations of Section 4m(1) of the Act, 7 U.S.C. § 6m(1)
### (Failure to Register as a CTA)

53. Paragraphs 1 through 52 are re-alleged and incorporated herein by reference.

54. Tradewale for compensation or profit, engaged in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in relevant part any agreement, contract, or transaction described in Section 2(c)(2)(C), thus making it a commodity trading advisors as defined by Section 1a(12) of the Act, 7 U.S.C. § 1a(12) (2018).

55. Tradewale is not exempt from registering as a CTA.

56. Tradewale made use of the mails or any means of interstate commerce in connection with its business as a CTA, while failing to register with the Commission as a CTA, in violation of 7 U.S.C. § 6m(1).

## VI.

### RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), and pursuant to its own equitable powers:

A. Find that Defendants violated Sections 4b(a)(2)(A)-(C), 4*o*(1), and 4m(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6*o*(1), and 6m(1) (2018), and Commission Regulations 5.2(b), 17 C.F.R 5.2(b), (2020);

B. Enter an order of permanent injunction prohibiting Defendants and any of the Defendants' officers, agents, servants, employees, and attorneys and other persons who are in active concert or participation with Defendants, from engaging in conduct in violation of Sections 4b(a)(2)(A)-(C), 4*o*(1), and 4m(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(A)-(C), 6*o*(1), and 6m(1) (2018), and Commission Regulations 5.2(b), 17 C.F.R § 5.2(b) (2020);

C. An order of permanent injunction restraining, enjoining and prohibiting Defendants, and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, from directly or indirectly:

  a. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2018));

  b. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2014) for his/her/their/its own personal account or for any account in which he/she/they/it has/have a direct or indirect interest;

  c. Having any commodity interests traded on his/her/their/its behalf;

  d. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

14

  e. Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

  f. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2020); and/or

  g. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2020)), agent or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2018)) registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2020).

D. Enter an order directing Defendants, as well as any successors thereof, to disgorge, pursuant to such procedure as the Court may order, all benefits received including but not limited to, salaries, commissions, loans, fees, revenues, and trading profits derived, directly or indirectly, from the acts or practices which constitute violations of the Act and the Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

E. Enter an order directing Defendants, as well as any successors thereof, to make full restitution, pursuant to such procedure as the Court may order, to every person who has sustained losses proximately caused by the violations of the Act and the Regulations, as described herein, and pre- and post-judgment interest from the date of such violations;

F. Enter an order directing Defendants, as well as any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any customer whose funds were received by them as a result of the acts and practices which constituted violations of the Act and the Regulations as described herein;

G. Enter an order directing Defendants and any successors thereof to pay civil monetary penalties under the Act, in an amount not to exceed the penalty described by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2018), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Improvements Act of 2015, Pub. 114-74 Tit. VII § 701, 129 Stat. 584, 599-600, *see* Regulation 143.8, 17 C.F.R. § 143.8 (2018) for each violation of the Act and Regulations, as described herein.;

H. Enter an order directing Defendants and any successors thereof to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2018); and

I. Enter an order granting such other and further relief as the Court deems proper.

## VII.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Dated: September 29, 2021

        Respectfully submitted,

        ATTORNEYS FOR PLAINTIFF COMMODITY
        FUTURES TRADING COMMISSION

        Manal M. Sultan
        Deputy Director


        **s/ Katherine Rasor**
        Katherine Rasor
        Trial Attorney
        Telephone: (646) 746-9700
        E-mail: *krasor@cftc.gov*

        David W. MacGregor
        Chief Trial Attorney
        Telephone: (646) 746-9700
        E-mail: *dmacgregor@cftc.gov*


        Commodity Futures Trading Commission
        Division of Enforcement
        140 Broadway, 19th floor
        New York, NY 10005
        Telephone: (646) 746-9700