UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**COMMODITY FUTURES TRADING COMMISSION**,

Plaintiff,

v.

**TRADEWALE LLC,** *et al.*,

Defendants.

Civil Action No. 21-17776 (ZNQ) (DEA)

**OPINION**

**QURAISHI, District Judge**

      **THIS MATTER** comes before the Court upon an unopposed Motion for Default Judgment (the "Motion") (ECF No. 14) filed by Plaintiff Commodity Futures Trading Commission ("CFTC") against Defendants Tradewale LLC, Tradewale Managed Funds (collectively, "Tradewale Defendants" or "Tradewale"). In support of the Motion, Plaintiff filed a Memorandum of Law ("Moving Br.," ECF No. 14-1), and a Declaration of Christopher Giglio ("Giglio Decl.", ECF No. 14-2). The Court decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, CFTC's Motion will be GRANTED.

1

I.     BACKGROUND

   A.     Factual Background[1]

CFTC is an independent federal regulatory agency charged by Congress with the responsibilities for administering and enforcing the provisions of the Commodity Exchange Act ("the Act" or "CEA") and CFTC Regulations. (Complaint ("Compl.") ¶ 15, ECF No. 1.)

Defendant Tradewale LLC was a limited liability company organized in Illinois, dissolved in around September 2020. (*Id*. ¶ 16.) Defendant Tradewale Managed Funds is an entity purportedly located in London, United Kingdom offering forex investments. (*Id*. ¶ 17.) Tradewale Managed Fund has never been registered in any capacity with CFTC. (*Id*.)

Defendant Valdas Dapkus ("Defendant Dapkus") is an individual whose last known address is in Lombard, Illinois. (*Id*. ¶ 18.) Defendant Dapkus is the sole authorized signatory for Tradewale LLC's United States bank accounts. (*Id*.)

From at least 2017 to in or about April 2020 (the "Relevant Period"), Tradewale used the mail and other means of instrumentalities of interstate commerce to engage in the business of a commodity trading advisor. (*Id*. ¶ 20.) During the Relevant Period, Tradewale, acting through its officers, employees, and agents, including Defendant Dapkus, solicited the retail public using its website, tradewale.com. (*Id*.) Tradewale solicited customers to deposit funds with it in order to achieve specific purported returns based on trading, including by trading forex. (*Id*.) By way of example, Tradewale's Facebook page claimed its customers received over 55% APY returns based on its supposed "unique trading system." (*Id*. ¶ 21.) Tradewale's Facebook page also indicated that customers could trade on the market with minimal risk and investment. (*Id*.)

---

[1] For purposes of this Motion, the Court will construe the factual allegations contained within the Complaint as true. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

Tradewale's LinkedIn page stated that it was a London-based financial services company with four separate trading systems that had been tested in all market conditions. (*Id*. ¶ 22.) Additionally, during the Relevant Period, a post entitled "Tradewale – Forex Trading Made Easy" was published on Medium.com (the "Medium.com Post") purportedly authored by a senior trader at Tradewale. (*Id*.) The Medium.com post claimed Tradewale used artificial intelligence to trade forex, and that Tradewale was good for newbie investors. (*Id*.) The Medium.com post further stated that the "Tradewale team has mastered the best AI techniques and teamed with savvy human investment managers" and "promise[d] an average 4.95% monthly return" on forex. (*Id*. ¶ 23.) The Medium.com post additionally indicated that Tradewale had a "simple fee structure", "accounts under $25,000 pay Tradewale 20 percent of returns", and accounts with higher capital investments pay "a progressively lower fee." (*Id*.)

Tradewale distributed a summary prospectus to prospective customers entitled "Tradewale Managed Fund" (the "Prospectus") dated February 28, 2019. (*Id*. ¶ 24.) The Prospectus stated that 20% of the funds held by Tradewale were invested in forte in January 2018, and 24% of funds were invested in forex in January 2019. (*Id*.) The Prospectus claimed Tradewale achieved average monthly rates of return of 4% to 11%, consistent positive returns resulting in monthly deposits, and that over the past five years, Tradewale provided average annual returns of over 55%. (*Id*. ¶¶ 24, 25.)

Customers seeking to set up accounts with Tradewale were instructed to wire funds to Tradewale's U.S. bank accounts, controlled by Defendant Dapkus, or to send checks to Tradewale's businesses addressed in the United States. (*Id*. ¶ 26.) Tradewale maintained a UPS box located in Downers Grove, Illinois, which was rented beginning in or about March 2018. (*Id*. ¶¶ 26, 27.)

At least 15 customers deposited a total of at least $700,000 into Tradewale's U.S. bank accounts. (*Id*. ¶ 28.)  Customers who invested funds with Tradewale received an online confirmation of their investment. (*Id.* ¶ 29.)  These customers were initially able to track purported profits online and contact Tradewale customer support. (*Id*.)

By in or around mid-2019, customers were unable to withdraw funds from their Tradewale accounts, and were also unable to access the Tradewale website or to contact customer support. (*Id*. ¶ 30.)  Most of Tradewale's U.S. customers were unable to withdraw the funds they invested with Tradewale or any purported profits in their accounts. (*Id*.)

CFTC alleges upon information and belief that Tradewale did not trade forex for customers' accounts as represented. (*Id*. ¶ 31.)  Tradewale does not have any trading accounts with futures commission merchants or retail foreign exchange dealers registered with CFTC. (*Id*.) Tradewale's business bank account statements – into which customers' funds were deposited – indicate that Tradewale used customers' funds for restaurants, drug stores, supermarkets, department stores, lodging, and cash withdrawals at ATMs. (*Id*.)

The funds Tradewale received for the purpose of trading forex were contributed by persons who were not eligible contract participants ("ECPs") as defined in 7 U.S.C. § 1a(18)(A)(xi) (2012). (Id. ¶ 33.)  At no point did Tradewale limit its solicitations to ECPs. (*Id*.)

**B.      Procedural Background**

On November 29, 2021, CFTC filed a four-count Complaint against Defendants alleging violations of the CEA and CFTC regulations under 7 U.S.C. § 6b(a)(2)(A)-C (futures fraud) (Count One), violations of CFTC Regulation 5.2(b) (forex fraud) (Count Two), violations of Section 4o(1) of the CEA (Fraud by Commodity Trading Advisor) (Count Three), and violations of Section 4m(1) of the Act (Failure to Register as a CTA) (Count Four).  On that same day, summonses were

issued that included a notice that failure to respond would result in a default. (ECF No. 2.) Defendant Tradewale LLC was served with the Summons and Complaint on May November 12, 2021. (ECF No. 4.) Accordingly, Defendant Tradewale LLC's answer was due on December 3, 2021. (*See id*.)

On December 28, 2021, CFTC filed a Motion for service by publication or email. (ECF No. 5.) The Court on January 12, 2022 denied CFTC's Motion for service by publication or email without prejudice. (ECF No. 6.) On March 21, 2022, CFTC filed a Summons return, attaching proof of delivery to Defendant Tradewale Managed Fund in London, United Kingdom. (ECF No. 8.)

On March 23, 2022, CFTC filed a request for default as to Defendants Tradewale LLC and Tradewale Managed Fund. (ECF Nos. 9, 10.) On August 10, 2022, the Court entered a Notice of Call for dismissal pursuant to Local Civil Rule 41.1(a). (ECF No. 11.) CFTC thereafter, on September 3, 2022, filed a declaration in response to the notice of call for dismissal, indicating that it was continuing good faith efforts to prosecute the action. (ECF No. 13.) That same day, CFTC filed a Motion for Default Judgment as to Tradewale LLC and Tradewale Managed Fund. (ECF No. 14.)

As of the date of this Opinion, all Defendants have failed to respond to the Complaint or appear in this action.

## II.    **LEGAL STANDARD**

Rule 55 of the Federal Rules of Civil Procedure governs default. Fed. R. Civ. P. 55. Pursuant to the Rule, the clerk must enter default against a party who "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After this, a plaintiff may seek entry of default judgment under either Rule 55(b)(1) or Rule 55(b)(2).

*Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008). *See also Nationwide Mutual Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, 175 F. App'x 519, 521, n.1 (3d. Cir. 2006) ("Prior to obtaining a default judgment under either Rule 55(b)(1) or Rule 55(b)(2), there must be entry of default as provided by Rule 55(a).").

"It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citation omitted). However, "entry of default judgments is disfavored as decisions on the merits are preferred." *Animal Sci. Prods. v. China Nat'l Metals & Minerals Imp. & Exp. Corp.*, 596 F. Supp. 2d 842, 848 (D.N.J. 2008) (citing *Hritz*, 732 F.2d at 1181). In other words, the district court must remain mindful that entry of default "is a sanction of last resort." *Id.* (citing *Super 8 Motels, Inc v. Kumar*, Civ. No. 06-5231, 2008 WL 878426, at *3 (D.N.J. Apr. 1, 2008)).

"Before entering default judgment, the court must address the threshold issue of whether it has subject matter jurisdiction and personal jurisdiction over the parties." *Maersk Line v. TJM Int'l L.L.C.*, 427 F. Supp. 3d 528, 532 (D.N.J. 2019) (citing *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)). After that, "[i]n assessing whether the entry of default judgment is warranted, the court utilizes a three-step analysis, under which the court must determine (1) whether there is sufficient proof of service[;] (2) whether a sufficient cause of action was stated[;] and (3) whether default judgment is proper[.]" *Paniagua Grp., Inc. v. Hosp. Specialists, LLC*, 183 F. Supp. 3d 591, 600–01 (D.N.J. 2016)

Before determining whether imposing the extreme sanction of default is proper, district courts must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default. *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987). An

entry of default judgment is not a right that plaintiffs are entitled to and a "defendant's failure to appear or answer does not vitiate" the court's responsibility to examine the complaint. *Paniagua Grp., Inc.*, 183 F. Supp. 3d at 600.

### III. DISCUSSION

#### A. Subject Matter Jurisdiction and Personal Jurisdiction

This Court possesses jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a–1(a) (2012), which authorizes the CFTC to seek injunctive and other relief in a United States district court against any person whenever it shall appear to the CFTC that such person has engaged in any act or practice that violates the Act or Regulations.

The Court is also satisfied it has personal jurisdiction over Defendants because the Complaint includes allegations, which the Court accepts as true in this context, asserting that Defendants transacted business in this District and certain transactions, acts, practices, and courses of business alleged in this Complaint occurred in this District. (Compl. ¶ 14.) The Complaint additionally includes allegations that during the Relevant Period, at least one customer who invested funds with Tradewale resided in Flemington, New Jersey. (*Id.*)

Finally, venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a–1(e) (2012), because the acts and practices in violation of the Act and Regulations occurred within this District.

#### B. Sufficient Proof of Service

Before granting default judgment, the Court must also consider whether process was properly served on Defendants.

*1. Defendant Tradewale LLC*

Rule 4 of the Federal Rules of Civil Procedure provides for service on a corporation within the United States, "by delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." *Teamsters Health & Welfare Fund of Phila. and Vicinity v. Dublin Paper Co.*, Civ. No. 11-7137, 2012 WL 2018062, at *2 (D.N.J. July 24, 2012).

Here, Tradewale LLC dissolved in or about September of 2020. (Compl. ¶ 16.) Under both New Jersey and Illinois law, however, a plaintiff may serve the registered agent of a dissolved corporation under certain circumstances. *See Johnson v. Four States Enters., Inc.*, 355 F. Supp. 1312, 1318 (E.D. Pa. 1972), *aff'd*, 495 F.2d 1368 (3d Cir.1974) ("[U]nder New Jersey Law, a corporation after dissolution may be sued for a cause of action in tort [or contract] arising before such dissolution, and process may be served on the registered agent of the corporation." (internal citation omitted)); *see also Goode v. PennyMac Loan Servs.*, Civ. No. 14-1900, 2014 WL 6461689, at *9 (N.D. Ill. Nov. 18, 2014) ("If a corporation is dissolved, a plaintiff may serve the registered agent on record for five years after the dissolution of the corporation.").

As set forth above, the docket reflects that an authorized agent of Defendant Tradewale LLC was served with the summons and Complaint on November 12, 2021. (*See* ECF No. 4.) This was accomplished by personally serving Connor Doyle, authorized to accept service, at 200 E. Randolph, Chicago, Illinois, on November 12, 2021 at 9:25 a.m. (*See* ECF No. 4; *see also* Giglo Decl. at Ex. D ¶ 6.)   The Court therefore finds that service on Defendant Tradewale LLC was proper.

*2. Defendant Tradewale Managed Fund*

"[S]ervice abroad is governed by the terms of the Hauge Convention." *Trump Taj Mahal Associates v. Hotel Servs., Inc.*, 183 F.R.D. 173, 176 (D.N.J. 1998) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 696–700 (1988)). "Article 10(a) of the Hague Convention permits service of process by mail on foreign corporations so long as the receiving country has not filed objection to this method." *Id*. at 181 (finding that service upon an England Corporation my international registered mail comports with Article 10(a) of the Hague Convention.)

Here, the Summons and Complaint were sent by the Clerk of the Court to Tradewale Managed Fund in London, England via International Registered Mail. (*See* ECF No. 8.) Proof of delivery was filed with the Court. (*See id*.) Accordingly, the Court finds that service on Defendant Tradewale Managed Fund was proper.

### C.  Sufficient Cause of Action

Before entering default judgment, the Court must also review the Complaint and determine whether the "unchallenged facts constitute a legitimate cause of action." *DirecTV, Inc. v. Asher*, Civ. No. 03–1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63). The Court must also accept CFTC's "well-pleaded" allegations as true. *Comdyne I, Inc.*, 908 F.2d at 1149.

*1. Counts One and Two*

Here, CFTC alleges violations of Section 4b(a)(2)(A)-(C) of the CEA and CFTC Regulation 5.2(b)(1)-(3). (*See* Compl.)

Section 4b(a)(2)(A) and (C) of the Act, 7 U.S.C. § 6b(a)(2)(A), (C) (2012), prohibits any person or entity from cheating, defrauding, or misleading another person in connection with off-

exchange commodity futures or forex contracts. Section 4b(a)(2)(A)–(C) of the Act applies to forex transactions as if they were futures contracts. Section 2(c)(2)(C)(iv) of the Act, 7 U.S.C. § 2(c)(2)(C)(iv) (2012). CFTC may establish a violation of Section 4b(a)(1)(A) and (C) of the Act by showing that Defendants made a material misrepresentation, misleading statement, or deceptive omission with scienter. *CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 447 (D.N.J. 2000). Scienter "is an 'intent to deceive, manipulate, or defraud,' and it may be shown either by conscious behavior or recklessness." *CFTC v. Equity Fin. Grp. LLC*, 572 F.3d 150, 159 (3d Cir. 2009) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976)). A statement or omission is material if "'a reasonable investor would consider it important in deciding whether to make an investment.'" *Rosenberg*, 85 F. Supp. 2d at 447 (quoting *Saxe v. E.F. Hutton & Co., Inc.*, 789 F.2d 105, 109 (2d Cir. 1986)). Account balances and profits "'constitute information that a reasonable investor would consider important in trading commodity futures. . .'" *CFTC v. Cifuentes*, Civ. No. 16-6167, 2018 WL 1904196, at * 5 (D.N.J. April 20, 2018) (quoting *id*. at 448).

Section 4b(a)(2)(B) of the Act prohibits the creation of false reports or statements in connection with off-exchange futures or forex contracts. "'Delivering, or causing the delivery of, false account statements to customers relating to forex trades. . .constitutes a violation of Section 4b(a)(2)(B) of the Act.'" *Cifuentes,* 2018 WL 1904196, at *5 (quoting *CFTC v. Total Call Grp*., Civ. No. 10-513, 2012 WL 1642196, at *7 (E.D. Tex. Mar. 30, 2012).

Regulation 5.2(b) makes it unlawful, in connection with an off-exchange retail forex transaction, to use the mails or any means or instrumentality of interstate commerce to (1) cheat or defraud or attempt to cheat or defraud any person; (2) willfully make a false report or statement; or (3) willfully deceive any person by any means.

The facts of the Complaint, taken as true for purposes of the instant motion, adequately allege that Tradewale Defendants acted with scienter by intentionally making material misrepresentations and omissions to entice individuals to deposit and invest funds with Defendants, and then misappropriated those funds for their own benefit.  (*See* Compl. ¶¶ 1–3, 19–33.)

   *2. Count Three*

   Section 6o(1) of the Act states:

> It shall be unlawful for a commodity trading advisor, associated person of a commodity trading advisor, commodity pool operator, or associated person of a commodity pool operator by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—
> (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or
> (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

"The purpose of § 6o(1) is to 'implement[ ] the fiduciary capacity that characterizes the advisor's relationship to his clients.'"  *CFTC v. Perkins*, Civ. No. 06-4674, 2009 WL 806576, at *7 (D.N.J. Mar. 25, 2009) (quoting *CFTC v. Savage*, 611 F.2d 270, 285 (9th Cir. 1980)).

   "Courts hold that while the language of § 6o(1)(A) requires a defendant to act with scienter, § 6o(1)(B) does not."  *Id*. (citing *Commodity Trend Serv. v. CFTC*, 233 F.3d 981, 993 (7th Cir. 2000)).

   Here, the Complaint alleges that Tradewale Defendants, for compensation or profit, engaged in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or advisability of trading forex, as described by 2(c)(2)(C)(i) of the Act.  (*See* Compl. ¶ 4.)  The Complaint therefore alleges that Tradewale was a Commodity Trading Advisor ("CTA") as defined in Section 1a(12)(A)(i) of the Act.  Sections 4o(1)(A) and

(B) of the Act apply to CTAs, whether registered or not. *See Perkins*, 2009 WL 806576, at *7 (noting that actual registration as a commodity pool operator with CFTC is not required to "fall within the ambit of § 6o(1)."); *see also CFTC v. Poole*, Civ. No. 05-859, 2006 WL 1174286, at *4 (M.D.N.C. May 1, 2006) (entering default judgment against unregistered defendant for violations of Sections 4(o)(1)(A) and (B)).

Additionally, the allegations that support CFTC's forex fraud claims under Sections 4b(a)(2)(A)-(C) of the Act in Count One additionally support Plaintiff's Sections 4o(1)(A) and (B) fraud claims in Count Three. *See Cifuentes*, 2018 WL 1904196, at *6 ("The same intentional or reckless misappropriations, misrepresentations, and omissions of material fact violative of section 4b of the Act. . .also violate Sections 4o(1)(A)-(B)." (internal citations omitted)). Accordingly, the Complaint sufficiently alleges violations of Section 6o(1) of the Act.

*3. Count Four*

Section 4m(1) of the Act provides that it is unlawful for any CTA to make use of the mails or any means or instrumentality of interstate commerce in connection with its business as a CTA without being registered with the CFTC. *See* 7 U.S.C. § 6m(1) (2018).

Here, the Complaint alleges that Tradewale Defendants, acted as a CTA because it solicited funds for an investment vehicle by way of the mail or other means of interstate commerce. (*See* Compl. ¶¶ 48-52.) Because Tradewale was unregistered with the CFTC, Tradewale Defendants, according to the allegations contained within the Complaint, violated Section 4m(1) of the Act.

**D.      Whether Default Judgment is Proper**

Next, the Court considers whether default judgment is proper. Here, Defendants are subject to default because they have failed to respond to the Complaint. In the absence of a responsive pleading, there is nothing in the record to indicate that Defendants have any meritorious defenses.

Second, Defendants' failure to respond and litigate this action would leave Plaintiff without a remedy to obtain damages that resulted from Tradewale Defendants fraud or misrepresentations. Additionally, Tradewale Defendants' failure to litigate this action will result in CFTC being unable to fulfill its congressional mandate of enforcing the Act. Therefore, this Court finds that Plaintiff has been prejudiced and will continue to be further prejudiced if default judgment is not granted.

Third, this Court finds that Defendants are presumably culpable due to their failure to respond to this action despite being properly served with the Complaint and Summons. *See Slover v. Live Universe, Inc.*, Civ. No. 08-02645, 2009 WL 606133, at *2 (D.N.J. Mar. 9, 2009) ("[d]efendant is also presumed culpable where it has failed to answer, move, or otherwise respond"). As of the date of this Opinion, neither Tradewale Defendant has responded to the Complaint. Therefore, given that Plaintiff satisfies all of the necessary requirements, the Court will enter default judgment for Plaintiff.

### E.     Permanent Injunction

Section 6c(a) of the Act, 7 U.S.C. § 13a–1(a) (2012), authorizes the CFTC to seek, and the Court to impose, injunctive relief against any person whenever it shall appear to the CFTC that such person has engaged in any act or practice that violates the Act or Regulations.

The "'ultimate test'" for entry of an injunction under the Act "'is whether the defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future.'" *CFTC v. Siegel*, Civ. No. 13-5755, 2014 WL 7404537, at *9 (D.N.J. Dec. 30, 2014) (quoting *CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1346 (11th Cir. 2008)). Future violations of the Act or Regulations "may be inferred, or even presumed, from past unlawful conduct, and the absence of proof to the contrary." *CFTC v. Am. Metals Exch. Corp.*, 693 F. Supp. 168, 171 (D.N.J. 1988) (citing *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979)).

"The scope of injunctive relief can be tailored to meet the circumstances of the violations shown." *Cifuentes*, 2018 WL 1904196, at *8. Courts have entered permanent injunctions against future violations of the Act. *See, e.g., Rosenberg*, 85 F. Supp. 2d at 455 (permanently enjoining defendants "from future violations of" provisions of the Act). Courts have also permanently enjoined defendants from registering with the CFTC and engaging in any commodity-related activity. *See Cifuentes*, 2018 WL 1904196, at *8 (imposing permanent trading and registration bans); *see also Wilshire*, 531 F.3d at 1346 (11th Circuit upholding the district court's permanent injunction prohibiting the defendants from "engaging in any commodity-related activity").

As set forth above, the well-pleaded facts of the Complaint establish that Tradewale Defendants' unlawful conduct makes it highly likely that they will be repeat violators unless permanently restrained by this Court. *See Am. Metals Exch. Corp.*, 693 F. Supp. at 171. As alleged, Tradewale Defendants did not trade forex for customers' accounts as it represented it would, and used customer's funds for "restaurants, drug stores, supermarkets, department stores, lodging, and cash withdrawals at ATMs." (Compl. ¶ 31.) Injunctive relief is appropriate in these circumstances. *See Rosenberg*, 85 F. Supp. 2d at 454 (granting CFTC's motion for permanent injunction because defendants' misappropriation of customer funds was "egregiously fraudulent conduct" that made future violations of the Act likely).

Therefore, the Court finds that there is a reasonable likelihood that Tradewale Defendants will continue to violate the Act and Regulations unless permanently restrained and enjoined by the Court. The intentional and egregious nature of Defendants' fraudulent conduct warrants permanent injunctive relief, including registration and trading bans.

**F.     Restitution and Civil Monetary Penalty**

*1.     Restitution*

Section 6c(d)(3)(A) of the Act, 7 U.S.C. § 13a–1(d)(3)(A) (2012), authorizes the Commission to seek, and the Court to impose, equitable remedies for violations of the Act, including "restitution to persons who have sustained losses proximately caused by such violation (in the amount of such losses)." "Courts calculate restitution 'as the difference between what Defendants obtained and the amount customers have already received back.'" *Cifuentes*, 2018 WL 1904196, at *10 (quoting *CFTC v. Ross*, Civ. No. 09-54432, 2014 WL 6704572, at *3 (N.D. Ill. Nov. 26, 2014)).

As a result of Tradewale Defendants' fraudulent solicitations, Tradewale Defendants received a total of at least $713,520.00 from at least 17 customers. (Giglo Decl. ¶ 18, Ex. G.) None of these customers have received any return of their principal investment. (*Id.*)

Accordingly, Tradewale Defendants are ordered to pay, on a joint and several basis, restitution in the amount of $713,520.00 (seven-hundred thirteen thousand, five-hundred and twenty dollars) ("Restitution Obligation"). Post-judgment interest shall accrue beginning on the date of entry of the accompanying Order and shall be determined pursuant to 28 U.S.C. § 1961 (2012).

CFTC argues that the National Futures Association ("NFA") be appointed as monitor to supervise the distribution of the restitution funds to the affected customers. (Moving Br. at 22.) The Court agrees and will appoint the NFA as Monitor to supervise distribution of the Restitution Obligation. *See Cifuentes*, 2018 WL 1904196, at *10 (appointing the NFA as monitor to distribute payments made against the Restitution Obligation to Defendants' pool participants).

> 2. *Civil Monetary Penalty*

Section 6c(d)(1) of the Act, 7 U.S.C. § 13a–1(d)(1) (2012), and Regulation 143.8(a)(4)(ii)(B), 17 C.F.R. § 143.8(a)(4)(ii)(B) (2016), authorize the CFTC to seek, and the Court to impose, a civil monetary penalty of triple Defendants' monetary gain from each violation of the Act or Regulations, or $167,728 per violation, whichever is greater.

The Court considers numerous factors in determining an appropriate civil monetary penalty under the Act, including (1) whether Defendants' illegal acts violated core provisions of the Act; (2) whether Defendants acted with scienter; (3) the consequences resulting from Defendants' violations; (4) the financial benefits to Defendants; and (4) the harm to Defendants' customers. *See Wilshire*, 531 F.3d at 1346; *see also CFTC v. Yorkshire Grp., Inc.*, Civ. No. 13-5323, 2016 WL 8256380, at *6 (E.D.N.Y. Aug. 19, 2016).

Courts have routinely awarded civil monetary penalties in cases involving fraud. *See, e.g., CFTC v. Onsa*, 2014 WL 2960345, at *1 (E.D. Pa. Mar. 20, 2014) (entering civil monetary penalty of triple defendants' gain in commodity pool fraud case due to "the egregiousness of the defendants' intentional conduct"); *see also CFTC v. SK Madison Commodities, LLC*, 2014 WL 3887755, at *5 (S.D.N.Y. June 9, 2014) (entering default judgment and ordering a civil monetary penalty of "triple the amount misappropriated" where defendants "committed repeated violations of core provisions of the[Act] and Regulations."); *CFTC v. Rolando*, 589 F. Supp. 2d 159, 174 (D. Conn. 2008) ("obtaining customer funds and then hiding [defendant's] true conduct from his customers were serious violations of the Act ...that strike at the very core of the Act's regulatory system," requiring "a substantial civil monetary penalty.")

Here, Tradewale Defendants' conduct warrants the imposition of a significant monetary penalty. In fraudulently soliciting approximately $713,520.00 in customers' funds, Tradewale

16

Defendants spent hundreds of thousands of dollars of their victims' money on personal expenses. (*See* Giglio Decl. ¶ 18, Ex. G.)

Given Defendants' intentional and egregious conduct, the Court believes that a civil monetary penalty reflecting triple the funds Defendants fraudulently misappropriated is proper to deter future fraudulent schemes in violation of the Act and Regulations. *See Cifuentes*, 2018 WL 1904196, at *12. This penalty is authorized by Section 6c(d)(1) of the Act, 7 U.S.C. § 13a–1(d)(1) (2012), and Regulation 143.8(a)(4)(ii)(B), 17 C.F.R. § 143.8(a)(4)(ii)(B) (2016).

### IV. CONCLUSION

For the reasons stated above, the Motion for Default Judgment will be granted. Judgment in the amounts set forth above will be entered in favor of Plaintiff. An appropriate Order will follow.

**Dated: May 4, 2023**

 s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**